487 A.2d 409

**Thomas A. VAJDA**

v.

**Hye Kyong VAJDA a/k/a Margaret Vajda, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1984.

Filed Jan. 16, 1985.

574

Thomas M. Marsilio, Hazleton, for appellant.

Richard J. Marusak, Hazleton, for appellee.

Before CAVANAUGH, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from the final decree of divorce and equitable distribution of marital property entered by the Court of Common Pleas of Luzerne County. We affirm.

In November, 1981, appellee instituted this action requesting a divorce on the ground of indignities [1] as well as equitable distribution of marital property [2] and custody of the parties' children. A master was appointed to decide the issues of divorce and equitable distribution. Hearings were held, and the master submitted a report recommending that a divorce be granted to appellee, and containing certain recommendations regarding equitable distribution. Both parties filed exceptions to the report. The trial court remanded the case to the master for a determination of counsel fees. Exceptions were filed with respect to the second master's report. Following consideration of the parties' exceptions, the trial court entered a decree of divorce in favor of appellee and ordered certain equitable distribution of the marital property. This appeal followed.

The first issues we must address are whether the trial court abused its discretion in upholding the master's recommendation characterizing appellee as an injured and innocent spouse, and in granting a final decree of divorce. Our scope of review is both broad and restrictive.

[I]t is our duty, on appeal to make an independent study of the record and to determine whether a legal cause of action for divorce exists. *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974); *Arcure v. Arcure*, 219 Pa.Super. 415, 281 A.2d 694 (1971). Moreover, while the master's findings of fact and recommendation that a divorce be granted are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witness, his findings should be given the fullest consideration. *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975); *Sells v. Sells*, 228 Pa.Super. 331, 323 A.2d 20 (1974).

1. Act of April 2, 1980, P.L. 63, No. 26, § 201(d), 23 P.S. § 201(d).
2. *Id.* § 401(d).

*Schrock v. Schrock,* 241 Pa.Super. 53, 57–58, 359 A.2d 435, 437–38 (1976). *Accord Estep v. Estep,* 326 Pa.Super. 404, 474 A.2d 302 (1984); *Mott v. Mott,* 308 Pa.Super. 1, 453 A.2d 1038 (1982); *Rorabaugh v. Rorabaugh,* 302 Pa.Super. 1, 448 A.2d 64 (1982); *Rollman v. Rollman,* 280 Pa.Super. 344, 421 A.2d 755 (1980).

The Pennsylvania Divorce Code, 23 P.S. § 201(a)(6) provides:

> (a) It shall be lawful for the court to grant a divorce to the innocent and injured spouse whenever it shall be judged that the other spouse shall have:

> .        .        .        .        .

> (6) Offered such indignities to the innocent and injured spouse as to render his or her condition intolerable and life burdensome.

Section 201 does not make a serious departure from our prior law regarding indignities.[3] Therefore, in interpreting this section, we are guided by our earlier decisions involving indignities.

In *Keller v. Keller,* 275 Pa.Super. 573, 419 A.2d 49 (1980) (allocatur denied), this Court aptly summarized the law of indignities in Pennsylvania.

> To make out a charge of indignities, three elements must be proved: (1) a course of conduct that, although varying according to the circumstances of each case, must in every case (2) be inconsistent with the marital relationship, and (3) render the condition of the innocent party intolerable and his or her life burdensome....

---

**3.** 23 P.S. § 201 replaced the Act of May 2, 1929, P.L. No. 1237, § 10, as amended, which provided:

**§ 10.  Grounds for divorce from bond of matrimony**

1. When a marriage has been heretofore or shall hereafter be contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse:

.        .        .        .        .

(f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; or

Although no general rule can be formulated as to what constitutes indignities in a particular case, the matter being one that depends upon all the circumstances of the particular case and the position in life, character, and disposition of the parties ... our cases hold that proof of "vulgarities, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule" may be sufficient to make out a case for divorce based on indignities.... Moreover, several of these factors "may coalesce to justify a finding of indignities, although taken separately, no single incident or factor would be sufficient." ... Finally, it should be noted that in the present case, the burden of proving indignities was on the husband as the party seeking the divorce ... and that the husband was required to prove that he was an innocent and injured spouse....

*Id.,* 275 Pa.Super. 573, at 576–77, 419 A.2d at 51 (citations omitted). *See also McKrell v. McKrell,* 352 Pa. 173, 42 A.2d 609 (1945); *Beaver v. Beaver,* 313 Pa.Super. 512, 460 A.2d 305 (1983); *Rorabaugh v. Rorabaugh, supra; Barton v. Barton,* 248 Pa.Super. 278, 375 A.2d 96 (1977); *Schrock v. Schrock, supra.* As to the characterization of a party as an "innocent and injured spouse," we have repeatedly stated that for purposes of divorce, one need not be totally free from fault; if, however, there is nearly equal contribution by the parties to the marital discord, a divorce will not be granted to either spouse. *See e.g., Liebendorfer v. Liebendorfer,* 289 Pa.Super. 339, 433 A.2d 480 (1981); *Rollman v. Rollman, supra; Dukmen v. Dukmen,* 278 Pa.Super. 530, 420 A.2d 667 (1980); *Moorhead v. Moorhead,* 278 Pa.Super. 275, 420 A.2d 537 (1980); *Keller v. Keller, supra.*

Turning to the case at bar, the master's findings of fact, adopted by the trial court, may be briefly summarized: throughout the entire marriage, appellant constantly complained about appellee's earnings, despite the fact that appellee maintained a good job; appellant, who controlled the family finances, was unable to account for some of their

funds; it was discovered that appellant was secreting funds from the family finances in a bank account in her own name, located in New York; on occasion, appellant would leave the marital home for various amounts of time ranging from a few hours to as long as a week, without ever informing appellee of her whereabouts; appellee's family was prohibited by appellant from visiting the marital home; appellant often indicated to appellee that she had no love or affection for him and held him in hatred and contempt. In sum, the trial court stated:

> ... the master concluded that [appellant] worked at making life miserable for [appellee] rather than developing a flourishing relationship. With respect to credibility, the master adjudged [appellee] sincere and truthful but felt that [appellant's] contempt for [appellee] showed through her testimony. She also observed that [appellant's] testimony was in many respects contradictory.

The trial court also found that appellee was an innocent and injured spouse. Even though appellant alleged she was the victim of physical abuse resulting from appellee's temper, the court was convinced that appellee's misconduct was the result of appellant's "unceasing provocation over a period of nearly fifteen years." In fact the evidence offered on this issue was vague and unspecific.

■ Our independent review of the record leads us to the conclusion that the trial court was correct in (1) characterizing appellee as an innocent and injured spouse, and (2) granting the divorce.

The next issue we must address is whether the trial court abused its discretion by; (1) with respect to equitable distribution, ordering the marital residence sold, and the proceeds divided—60% to appellant and 40% to appellee [4]—rather than awarding the home as the sole property of appellant; and (2) awarding appellant only $500.00 in counsel fees.

4. Appellant does not contest the percentage of distribution.

Following hearings on the issues of equitable distribution and counsel fees, the master recommended that appellant be awarded the marital residence subject to a judgment note in favor of appellee, and $3,192.06 in counsel fees and expenses. The trial court rejected these recommendations and ordered the residence sold and awarded appellant $500.00 in counsel fees, requiring appellee to pay expenses.

■ "The equitable distribution of marital property is within the sound discretion and judgment of the lower court and its discretion shall not be disturbed absent an abuse of that discretion." *Gee v. Gee*, 314 Pa.Super. 31, 35, 460 A.2d 358, 360 (1983). *Accord Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984); *Pangallo v. Pangallo*, 329 Pa.Super. 22, 477 A.2d 885 (1984); *Estep v. Estep, supra; Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983). Section 401(c) of the Divorce Code grants a trial court "full equity power." In the case at bar, the court found no compelling reason for preserving the marital residence, especially when neither party was living there.[5] Sale of the home was within the trial court's equity powers under Section 401(c). We find no abuse of discretion in this decision.

■ In determining the propriety of an award of counsel fees, we likewise utilize the abuse of discretion standard of review. *See Semasek v. Semasek, supra; Pangallo v. Pangallo, supra; Prozzoly v. Prozzoly*, 327 Pa.Super. 326, 475 A.2d 820 (1984); *Sutliff v. Sutliff*, 326 Pa.Super. 496, 474 A.2d 599 (1984); *Ruth v. Ruth, supra; Gee v. Gee, supra; Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983) (en banc).

■ The trial court determined that the master's recommendations concerning counsel fees should be rejected given the disposition of the equitable distribution. Appellant would have substantial assets available after the sale of the marital residence, and therefore, her attorney's fees could

5. Appellant resides in New York.

be satisfied therefrom. We find no abuse of discretion in the award of counsel fees.

Order affirmed.