J-S12008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| MOLLIE MCGINLEY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PAUL J. PHILPOTT | |
| Appellant | No. 1251 MDA 2016 |

Appeal from the Order Entered July 11, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 10736 of 2013

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 31, 2017**

Appellant, Paul J. Philpott ("Husband"), appeals *pro se* from the order entered in the Luzerne County Court of Common Pleas, finalizing his divorce from Appellee, Mollie McGinley ("Wife"). The parties' marriage lasted fewer than five months. Husband argues the court erred in its distribution of the marital estate, and in its refusal to grant him alimony *pendente lite* ("APL") or spousal support during the proceedings. After a careful review of the record, we affirm.

The facts and procedural history of this case are as follows. Husband and Wife were married for fewer than five months. On September 10, 2013, Wife filed a complaint in divorce, seeking equitable distribution of the marital assets. Husband filed an answer and a counterclaim, seeking spousal

support, APL, and alimony.[1] Following a two-year separation, the court issued an order stating that Husband and Wife met the residence requirement in Pennsylvania's divorce code, that the parties lived separate and apart for over two years, and the marriage had been irretrievably broken. The court appointed a Master in divorce to adjudicate the remaining claims at issue, and the Master held a hearing.

In his report and recommendations, the Master recommended the court enter a decree in divorce, based on the court's own prior findings. The Master also made the following findings in his report: Husband is employed in various fields, and was evasive when the court questioned him about his current income levels; Wife is employed as a radiologist; neither party

---

[1] Prior to Wife's filing of the divorce complaint at issue in Luzerne County, Husband filed a complaint for spousal support and APL in Lackawanna County. Lackawanna County ultimately denied Husband's request for spousal support and APL following a hearing. Husband attempted to appeal the issue to our Court, and we quashed the appeal as interlocutory. To the extent Husband attempts to raise this issue to our Court in the instant appeal from the divorce action in Luzerne County, this is procedurally erroneous and we will not consider these arguments. The Luzerne County court stated in its opinion that it could not rule on the merits of Husband's issue due to res judicata, given that Husband raised that identical issue and the court entered an order denying it in Lackawanna County. "[I]t is well settled that the doctrine of res judicata applies to prevent litigants from bearing the burden of re-litigating the same issues with the same parties, and to promote judicial economy." *In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015) (citation omitted). Husband's earlier choice not to coordinate the actions under Pa.R.C.P. 213.1 means that he cannot now appeal his Lackawanna County issue from this Luzerne County action. Following the Luzerne County court's grant of divorce, Husband was then able to appeal from the dismissal of his prior Lackawanna County complaint for spousal support and APL.

identified material liabilities other than a loan on the vehicle Husband retained; neither spouse contributed to the education or increased earning power of the other spouse; Wife continued to provide medical insurance for Husband; neither party acted as a homemaker and the parties acquired little property during the length of the marriage; the parties did not establish a set standard of living given the short length of the marriage; both parties had ample income or the ability to secure ample income to provide for their individual needs; and Husband had not paid any child support to Wife at the time of the hearing. Based on these findings, the Master stated that were the issue of APL or spousal support properly before him, he would find that Husband was not entitled to either. Husband withdrew his claim for alimony at the hearing.

As for equitable distribution of the parties' assets, the Master made additional recommendations, finding: the vehicle Husband retained had a net value for purposes of equitable distribution of $12,166.00; Husband took Wife's personal, non-marital property for his own use and benefit, including furniture Wife had purchased; the personal property Husband took from Wife had a value of $8,206.00 when adjusted for depreciation; Wife had a $10,100.00 increase in her bank accounts which should be regarded as marital property, along with a $64.00 increase in her 401K account, and an IMac computer valued at $1,000.00; Husband submitted no credible evidence to show that Wife's stock acquisition prior to the date of the marriage should be considered marital property; the parties agreed that an

engagement ring Wife sold would be placed in a 529 account for the benefit of the parties' son; Husband's contention that he is entitled to a $966.67 refund related to his medical expenses that Wife paid for is without merit; the marital estate should be distributed with 52% going to Husband and 48% to Wife; based on these calculations and the property each party has retained, Husband owes Wife an equalization payment in the amount of $3,973.28.

Husband filed exceptions to the Master's report and recommendation. Thereafter, the trial court denied Husband's exceptions, adopted the Master's report and recommendation as an order of the court, and entered a decree in divorce. Husband timely filed a notice of appeal and complied with Pa.R.A.P. 1925(b).

On appeal, Husband argues a litany of issues, several of which are not properly before us. We decline to address Husband's spousal support and APL claims, given our above footnote regarding the procedural improprieties at issue here. Turning to Husband's contentions regarding the equitable distribution order, our standard of review in equitable distribution matters is as follows.

> It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] [w]hen reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] [t]he finder of fact is free to believe all, part, or none of the

evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003) (citation omitted; brackets in original). "[A] master may be appointed to hear ancillary economic claims prior to the entry of a divorce decree if grounds for divorce have been established." *Raines v. Raines*, 149 A.3d 375, 379 (Pa. Super. 2016) (citation omitted).

There is no simple formula by which to divide marital property; the method of distribution derives from the facts of the individual case. *See Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997). In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.A. § 3502, Equitable division of marital property, (a) General rule. "The courts attempt to split property equitably, instead of equally, taking into consideration such factors as length of marriage, the contributions of both spouses, ages and health of each spouse." *Taper v. Taper*, 939 A.2d 969, 974 (Pa. Super. 2007) (citation omitted). Moreover, a trial court may accept all, some, or none of the submitted testimony in determining the value of marital property. *See Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa. Super. 2003).

In his brief, Husband argues the trial court unreasonably compressed the timeline for trial, and failed to permit him adequate opportunity for discovery. Husband claims this procedural defect prejudiced him by unjustly deflating his equitable distribution award. We disagree. Wife filed for divorce

on September 10, 2013. Husband refused to consent to the divorce, and thus proceedings in divorce did not resume until two years later, at which time the court appointed the Master to hold a hearing. Prior to the hearing, Wife's counsel filed answers to all of Husband's discovery requests and provided requested documents. By contrast, Husband failed to provide information on his own assets and earnings prior to and throughout the hearing. Husband did not subpoena any person or records in order to expand on the already provided discovery. Husband had ample opportunity to independently verify Wife's earnings and assets. Therefore, we cannot agree with his present contention that he was unfairly rushed during the discovery process.

Husband also attempts to put forth several tangled claims regarding Wife's business assets and the value of certain marital property. Husband protests Wife's "willful withholding" of her personal financial information, then uses the same allegedly withheld information to advance a claim that the Master miscalculated the business assets eligible for equitable distribution. Additionally, Husband asserts the Master erred by overvaluing Husband's vehicle, misreading bank statements, refusing to count a refund issued to Wife for Husband's medical expenses as marital property, rejecting Husband's testimony regarding the value of the parties' wedding bands, and asserting Husband retained nonmarital property belonging to Wife. Husband

concludes the trial court erred by accepting the Master's findings. We disagree.

Instantly, the Master heard testimony from both parties regarding the value of Wife's partnership in her medical firm. *See* N.T., 2/24/16 at 77-80, 127-135. Both Husband and Wife also testified as to the value of Wife's bank accounts at the beginning and end of the marriage. *See id*. at 87-99, 135-142. Husband claimed at the hearing that Wife disposed of over $20,000.00 in assets immediately following the conclusion of the parties' marriage. *See id*. However, in his testimony Husband merely speculated about the necessity of certain expenses and disputed the math Wife's attorney used to calculate Wife's bank balance increase during the duration of the marriage, rather than providing any evidence to support his accusations. The Master found Wife testified credibly about her income and her assets in her bank account and at the firm. The Master also found Husband was unable to substantiate his accusation that Wife concealed assets with any documentation or other evidence. We agree with the Master's assessment, and decline to find any abuse of discretion in the court's decision to adopt these findings.

Similarly, Husband's other issues lack merit. The notes of testimony from the hearing belie Husband's argument regarding the valuation of his vehicle. Husband agreed the $10,384.00 lien value stated by Wife's counsel was "in the ballpark," and failed to present additional information to show

otherwise. ***Id***., at 36. Using this agreed-upon value, as well as the undisputed contributions each party provided at time of the vehicle's purchase, the Master calculated the marital property portion of the vehicle. The Master found that both parties were unable to submit credible evidence about the value of their respective wedding bands, and so it excluded these from the equitable distribution calculations. The Master also found Husband retained property that Wife purchased prior to the parties' marriage, based on receipts Wife submitted which gave details regarding the purchases. Husband's contentions to the contrary, including that Wife was not entitled to the value of the nonmarital property Husband retained because she did not make a "serious effort to reclaim" it, are not supported by the record. ***See*** Husband's Brief, at 47. Finally, the Master found Husband was not entitled to a refund for medical expenses, as Wife paid nearly all of the medical expenses for both parties.

In its Rule 1925(a) opinion, the court detailed, with extensive references to the record, its reasons for adopting the Master's findings. ***See*** Trial Court Opinion, 9/22/16, at 5-12. With regard to these issues, we find no abuse of discretion, misapplication of the law, or failure to follow procedure by the trial court. ***See Anzalone***, 835 A.2d at 780. Consequently, we deny Husband's requested relief, and affirm the trial court's order.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2017

MOLLIE MCGINLEY,

Plaintiff

vs.

PAUL PHILPOTT,

Defendant

FILED
PROTHONOTARY
LUZERNE COUNTY

2016 SEP 22 PM 2: 50

IN THE COURT OF COMMON
PLEAS OF LUZERNE COUNTY

:
: CIVIL ACTION—DIVORCE
:
:
:
:
: No. 10736 OF 2013
: 1251 MDA 2016

---

## MEMORANDUM PURSUANT TO PA.R.A.P. 1925 (a)

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff filed a complaint in Divorce on September 10, 2013 seeking a claim for

equitable distribution under Section 3301 (c) and (d) of the Divorce Code. On October 4, 2013,

the Defendant, filed an Answer and Counterclaim seeking claims for Spousal Support, Alimony

Pendente Lite and Alimony. On December 21, 2015, this Court appointed a Master in Divorce

with respect to the claims for divorce, equitable distribution, Alimony Pendente Lite, Attorneys

Fees, Costs and Expenses, and Alimony. A Master's hearing was held on February 24, 2016 at

9:00 a.m. comprising approximately four and one-half hours of testimony. The Defendant

elected to proceed Pro Se in the Master's hearing. A Master's Report was filed on March 22,

2016. On April 8, 2016, the Defendant filed Exceptions to Master's Report and Recommendation

and filed a Brief in Support of the Exceptions on May 31, 2016. On April 28, 2016, Plaintiff

filed her Answer to Defendant's Exceptions to Master's Report and Recommendation in

Divorce. On July 11, 2016, this Court entered a Decree in Divorce, denied the Defendant's

Exceptions to Master's Report and Recommendation and adopted the Master's Report and

Recommendation as an Order of Court. On July 25, 2016, Defendant filed a Notice of Appeal.

1

On July 27, 2016, this Court entered an Order directing the Defendant to file of record and serve on the Trial Judge a Concise Statement of Matters Complained of on Appeal. On August 11, 2016, the Defendant filed his Statement of Matters Complained of on Appeal.

The parties were married on March 11, 2013 in Jamaica and subsequently separated five (5) months later on August 7, 2013 (N.T. 2/24/16 at 10-11). Both parties were thirty-six years of age at the time of the Master's Hearing. (*Id* at 11-12). The Plaintiff, at the time of the hearing, was employed as a radiologist at Radiological Consultants, Inc. and the Defendant was employed in various fields including a real estate agent, a consultant and a contractor. *Id*.

## II. **DISCUSSION**

Defendant's Statement of Matters Complained of on Appeal consisted of thirty-three (33) matters raised by the Defendant. This Court will not list these matters verbatim since many of these matters are lengthy and redundant. The court will, however, summarize Defendant's areas on Appeal which are as follows:

1. The Defendant claims that the Lackawanna County Court of Common Pleas improperly denied his spousal Support and Alimony Pendente Lite and that the Luzerne County Court supported the opinion of the Lackawanna County Court.

2. The Defendant claims that his medical expenses were paid by the Plaintiff in June of 2013 and that Plaintiff was reimbursed $900.00 which should be subject to equitable distribution;

3. The Defendant claims that the Court did not consider the disparity of the parties' earning capacity in making its award of equitable distribution.

4. The Defendant claims that the Court did not award the proper percentage of equitable distribution to the parties.

2

5. The Defendant claims that the Court did not grant him the proper discovery of relevant assets.

6. The Defendant claims that the Court misapplied the law by not obtaining information regarding the increase in value of the Plaintiff's interest in accounts receivable in her medical partnership.

7. The Defendant claims that the Court improperly valued Plaintiff's wedding band and improperly precluded him from obtaining receipts for the wedding band to prove its value.

8. The Defendant claims that the Court improperly found that the value of the Plaintiff's wedding band is of similar value to the Defendant's wedding band.

9. The Defendant claims that the Court improperly valued Defendant's automobile and failed to give Defendant credit for the loan toward the vehicle.

10. The Defendant claims that the trial court exceeded its authority by including the non-marital furniture kept by Defendant as part of equitable distribution and by assigning the furniture a value.

11. The Defendant claims that the Court miscalculated the increased value of the Plaintiff's bank account.

With respect to the first matter, the Defendant claims that the Lackawanna County Trial Court improperly denied his spousal support and alimony pendente lite and that the Luzerne County trial court supported the opinion of the Lackawanna County Trial Court. This Court finds that the appeals regarding spousal support and alimony pendente lite are barred by *res judicata* in light of the prior Order entered by the Lackawanna County Court of Common Pleas over which Luzerne County Court has no jurisdiction or opportunity to make a judicial

3

determination. Therefore, the appeals pertaining to spousal support and alimony pendente lite should have been filed in the Court of Common Pleas of Lackawanna County after the Divorce was granted in Luzerne County since these matters were heard and addressed in Lackawanna County.

Eventhough this Court still finds the appeal relating to spousal support and alimony pendente lite is within the jurisdiction of the Court of Common Pleas of Lackawanna County, this Court supports the findings made by the Court of Common Pleas of Lackawanna County. In the event that the Superior Court disagrees with the trial court and finds that the appeals on spousal support and alimony pendente lite should be addressed by this Court, this Court finds that the Defendant should not be entitled to spousal support or alimony pendente lite. Pursuant to Pa.R.C.P. 1910.16-5 (b)(8), the support guidelines state as follows:

> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
> (8) in a spousal support of alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; . . .

In this case, the parties were only married for five (5) months. The Explanatory Comment-2005 to Pa.R.C.P. 1910.16-5 (b)(8) explains the significance of a short marriage and the reason for having this guideline. The Comment states as follows:

> . . . Subsection (b)(8) permits the court to consider the length of the marriage in determining the amount and duration of a spousal support or alimony pendente lite award. The primary purpose of these provisions is to prevent the unfairness that arises in a short-term marriage when the obligor is required to pay support over a substantially longer period of time than the parties were married and there is little or no opportunity for credit for these payments at the time of equitable distribution.

In addition to the marriage being of short duration, the Court finds the Defendant to be a highly educated individual with a significant earning capacity. The record indicates that the

4

Defendant has an earning capacity of $80,000.00-$100,000.00. The Defendant was also very evasive regarding his current income. For instance, when asked on cross examination how many days per week he works in construction, he responded "six days per week". When asked how much he earns per week, he responded, "I don't know." When asked by opposing counsel, how could Defendant not know his income since Defendant has an MBA, Defendant's response was, "I just didn't do the calculation, so I don't know. You didn't request this information prior to trial, so I can't provide it." N.T.2/24/16 at 175. The Court finds that the Defendant was hiding his income and was not cooperative in disclosing his earnings. The Court also finds that based on the Defendant's testimony, Defendant is not diligently attempting to secure gainful employment compatible with his earning capacity. Therefore, based on the above reasons, this Court finds the Defendant is not entitled to spousal support or alimony pendente lite.

With respect to the second matter, the Defendant claims that his medical expenses were paid by the Plaintiff in June of 2013 and that Plaintiff was reimbursed $900.00 which should be subject to equitable distribution. The Court finds that Defendant's medical expenses are to be addressed as part of Defendant's spousal support or alimony pendente lite, if any. However, Defendant would not be entitled to obtain a refund on the medical expenses since he is not entitled to receive spousal support or alimony pendente lite. In the event, the refund money is to be considered in equitable distribution, the Court finds that the percentage distribution awarded in this matter is fair and equitable. Furthermore, the Plaintiff in this matter paid for the majority of the marital bills, including medical related coverages. Also, the Defendant did not provide any child support to the Plaintiff for the parties' child. Therefore, the Court finds that the Defendant should not be entitled to any of the reimbursement money for the medical expenses.

5

With respect to the third matter, the Defendant claims that the Master and Court did not consider the disparity of the parties' earning capacity in making its award of equitable distribution. Plaintiff testified that her yearly income is approximately $275,000.00 per year. (N.T. 2/24/16 at 3) The Defendant has a current history of earning $80,000.00 to $100,000.00 per year. The Court finds that Defendant's employment is sporadic in the area of real estate sales, contracting and consulting. The Court also finds Defendant to be evasive regarding the amount of money he was earning within the past year or two. This Court acknowledges that the hearing in divorce was conducted by a Master. The Master is the appropriate fact finder in this case since the Master is present and able to observe and assess the testimony presented and the credibility of the witnesses. *See Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011). In divorce cases, the Master is in the best position to weigh the evidence presented and to assess the credibility of the witnesses. *Fonzi v.Fonzi*, 430 Pa. Super. 95, 633 A.2d 634 (1993). A Master's Report and Recommendation should not be lightly disregarded. *Arcure v. Arcure*, 219 Pa. Super. 415, 281 A.2d 694 (1971).

With respect to the fourth matter, Defendant claims that the Court did not award the proper percentage of equitable distribution to the parties and failed to value marital property. The Court finds that all marital assets were properly valued and that the Plaintiff provided appropriate documentation for valuation of the assets. In the case at bar, the Defendant was awarded a slight majority of the estate with the Plaintiff receiving 48% of the estate and the Defendant receiving 52%. The Master and Court considered and weighed all the factors in equitable distribution enumerated in 23 Pa. C.S.A. Section 3502 (a).

It is clearly within the discretion of the Court to equitably divide marital property. Central to equitable distribution is the recognition that equitable does not automatically mean

6

equal. *Marinello v. Marinello*, 354 Pa. Super. 471, 512 A.2d 635 (1986). A fifty/fifty division must not be presumed, *Powell v. Powell*, 395 Pa. Super. 345, 577 A.2d 576 (1990), rather the factors set forth in the Divorce Code (23 Pa. C.S.A. § 3502 (a)) must be examined and analyzed by the Master and the Court. The weight to be given the factors is exclusively within the discretion of the Court. *Sergi v. Sergi*, 351 Pa. Super.384, 516 A.2d 33 (1986). It is the public policy of the Commonwealth through the Domestic Relations Code to effectuate economic justice between the parties who are divorcing and to insure a fair and just determination in settlement of their property rights. (23 Pa.C.S.A.§3102 (a) (6))

It is also within the discretion of the Court, in evaluating marital property, to accept all testimony or portions of testimony or none of the testimony at all regarding the true and correct value of property. *Aletto v. Aletto*, 381 Pa.Super. 230, 537 A.2d 383 (1988). Yet, in making a valuation of marital property, the record should support the Court's determination of value, and the testimony of the parties and their experts, if any, may provide that support in the record. *Semasek v. Semasek*, 509 Pa. 282, 502 A.2d 109 (1985).

Appellate courts have allowed a trial court to make a determination of value even when the only evidence presented was testimony by the parties. The Master and the Court were forced to make findings based solely on the credibility of that testimony. *Bold v. Bold*, 358 Pa. Super. 7, 516 A.2d 741 (1986).

Equitable distribution is within the discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. *Gee v. Gee*, 314 Pa. Super. 31, 460 A.2d 358 (1983); *Harasym v. Harasym*, 418 Pa. Super. 486, 614 A.2d 742 (1992). The legislative guidelines of the Divorce Code must be applied to determine whether there has been an abuse of discretion. *Barnhart v. Barnhart*, 343 Pa. Super. 234, 494 A.2d 443 (1985). Such an abuse is

7

not found lightly, but only upon the showing of clear and convincing evidence. *Braderman v. Braderman*, 339 Pa. Super. 185, 488 A.2d 613 (1985). The Defendant had objected to all the values of assets assigned by the Master in this case which will be discussed separately below in in Defendant's matters of objections.

With respect to the fifth matter of objection, Defendant claims that the Court did not grant him the proper discovery of relevant assets. The Court finds that all evidence was properly presented by the Plaintiff for review by the Defendant and was properly answered by the Plaintiff. At the hearing, the Master specifically asked the Defendant whether from the time the divorce was filed up until the day of the hearing he had subpoenaed records or anyone to testify to substantiate his arguments. The Defendant responded, "no." N.T. 2/24/16 at 134. Furthermore, pursuant to Pa.R.C.P. 1920.74, when a Master in Divorce is appointed, an averment is made in the Motion that discovery is complete as to the claims for which the appointment of Master is appointed. The Court also finds that during the hearing, the Defendant would not accept Plaintiff's answer as to her accounts receivable not being purchased. Defendant kept insisting that her accounts receivable were purchased and that evidence was withheld from him. *Id.* at 129. The Court finds that proper discovery occurred and that it was Defendant who did not take the necessary steps to substantiate the value of Plaintiff's assets.

With respect to the six matter of objection, Defendant claims that the Master and Court misapplied the law by not obtaining information regarding the increase in value of the Plaintiff's interest in accounts receivables in her Medical Partnership. The Defendant, as stated above, kept insisting that the Plaintiff had purchased her accounts receivable. When Plaintiff was questioned regarding that issue, she testified that she did not purchase any accounts receivable; however, Defendant was not satisfied with her answer and kept insisting that she did purchase accounts

8

receivable without substantiating his accusation. The Court further finds that the Defendant was confusing Plaintiff's income with assets. The Plaintiff was advanced money in her practice which she has not yet earned and had to pay back the money, all of which was income to the Plaintiff and reflected on her tax return. There was no purchase of accounts receivable by the Plaintiff. N.T. 2/24/16 at 77-80; 129-133. The Court finds that Defendant's claim was entirely unsupported by the record. The Divorce action was filed September 10, 2013. Between the filing date of the Divorce and the date of the hearing, February 24, 2016, Defendant had ample opportunity to gather evidence to support his claim. The Defendant did not call any witnesses in support of his claim, nor did the Defendant introduce any documentation to support his claim. Furthermore, Defendant did not take any depositions of witnesses to substantiate his claim. Therefore, the court finds that Plaintiff's accounts receivable in her employment were properly considered.

With respect to the seventh matter of objection, The Defendant claims that the Court improperly valued Plaintiff's wedding band and improperly precluded him from obtaining receipts for the wedding band to prove its value. At the hearing, Defendant submitted an appraisal of a ring purchased three and one-half years ago; however, the Defendant was not able to substantiate that the appraisal presented pertained to Defendant's ring. Furthermore, the Defendant did not submit an appraisal reflecting the current value of Plaintiff's ring. Therefore, the Defendant was not able to represent the current value of the ring. *Id.* at 155-157.

With respect to the eight matter objection, the Defendant claims that the Court improperly found that the value of the Plaintiff's wedding band is of similar value to the Defendant's wedding band. It was clear from the parties' testimony that no credible evidence was presented by either party as to the current value of their wedding bands. Plaintiff testified

9

that she has her wedding band and Defendant claimed that his wedding band was taken by Defendant's mother. Defendant claimed that he had taken his wedding ring off and placed the ring in Plaintiff's robe. Then he testified that his mother-in-law came to their apartment and took Plaintiff's robe. However, Defendant testified that his mother-in-law did not know that the ring was in the robe. Nevertheless, the Defendant did not present any evidence as to the value of his ring which was clearly not in his possession based on his testimony. *Id.* at 160-162. As a result, neither party presented proof of the current value of their wedding rings. In valuing a marital asset, the current value of the marital assets, or the value at the time of trial should be used. *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988).

With respect to the ninth matter of objection, The Defendant claims that the Court improperly valued Defendant's automobile and failed to give Defendant credit for the loan toward the vehicle. In this case, both parties presented evidence as to the fair market value of Defendant's vehicle, namely a 2013 Infiniti JX35. The court accepted the NADA "trade in" value of the vehicle presented by the Plaintiff versus the Kelly Blue Book value and Edmunds book value presented by the Defendant. The "trade in" value of Husband's vehicle was $31,550.00. There was a lien against the vehicle. Therefore, $10,384.00 was deducted from the value contrary to Defendant's assertion that he was not given credit for the loan toward the vehicle. The remaining value was $21,166.00. However, Defendant had applied $9,081.84 toward the purchase of his vehicle. He received this sum for his 2005 Saab and this amount was reduced from the remaining value, for a net figure of $12,166.00 assigned to Defendant.

With respect to the tenth matter of objection, the Defendant claims that the trial court and Master exceeded its authority by including the non-marital furniture kept by Defendant as part of equitable distribution and by assigning the furniture a value. The Plaintiff had purchased

10

furniture prior to the marriage for $11,722.00. One year after purchasing the furniture, Husband removed the furniture from their apartment without Plaintiff's permission and kept the same during the separation period. Plaintiff represented that the furniture value would have depreciated by 30% and that the furniture kept by the Defendant should be assigned the sum of $8,206.00. The court finds that in light of Defendant keeping the furniture for his benefit and enjoying the use of the same during the separation, the value of furniture should be assigned to Defendant. Furthermore, by Defendant taking Plaintiff's furniture without her permission and enjoying the use of such furniture during separation, Defendant prevented and excluded Plaintiff from using the furniture for her benefit. The Defendant needs to compensate the Plaintiff for her loss and make the Plaintiff whole again since he interfered with her exclusive use of her pre-marital asset. Pursuant to 23 Pa.C.S.§3501 (a.1), the increase in value of any nonmarital property is calculated from the date of marriage to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. As stated above, the Defendant in this case had the exclusive use and benefit of Plaintiff's furniture and removed the same without her permission.

With respect to the eleventh matter of objection, the Defendant claims that the Court miscalculated the increased value of the Plaintiff's bank account. Pursuant to 23 Pa.C.S. §3501 (a.1), the increase in value of any nonmarital property is calculated from the date of marriage to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Prior to the marriage, Plaintiff had a bank account with Wells Fargo and Capital One ING Direct titled in her name. Plaintiff testified and presented evidence reflecting the value of both accounts at the time of marriage as $146,237.85 At the time of separation, it was $156,337.92, resulting in an increase in value of approximately

11

$10,100.00. Defendant argued that there was an additional $20,000.00 that was not taken into account. *Id.* at 86-98. Defendant argued that he had an exhibit with the proper calculations; however, he did not have it in his possession because he did not print the exhibit. While the Plaintiff introduced both of her exhibits for the accounts substantiating the increase in value of both accounts, Defendant, on the other hand, was making arguments without presenting any evidence for the Master's review. *Id.* at 137-139. Therefore, the increase in value of Plaintiff's accounts was properly valued by the Plaintiff with proof of documents.

## III.   **CONCLUSION**

In conclusion, the Court properly considered the factors in equitable distribution and properly allocated the percentage of distribution based on the parties' ages, health, the parties' incomes, earning capacities, opportunity of each party for future acquisition of capital assets and income and which party served as the primary custodian of their minor child.

THE OFFICES OF JUDICIAL RECORDS
& SERVICES OF LUZERNE COUNTY,
PENNSYLVANIA SHALL GIVE NOTICE
OF THIS ORDER TO ALL PARTIES
PURSUANT TO PA. R.C.P 236

BY THE COURT,

_Jennifer L Rogers_                J.

COPIES TO:

Brian J. Cali, Esquire
Attorney for Plaintiff
103 East Drinker Street
Dunmore, PA 18512

Paul Philpott
Pro Se
41 E. Walnut Street
Kingston, PA 18704

12